# IN THE COURT OF APPEALS OF IOWA

No. 21-0318
Filed May 26, 2021

IN THE INTEREST OF Z.C., Z.C., Z.C., E.W., and E.W.,
Minor Children,

C.W., Father of E.W. and E.W.,
    Appellant,

K.W., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

The mother of all five and the father of the youngest two children appeal the order terminating their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

David R. Fiester, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The parental rights of the mother of all five children in this case were terminated, as were the parental rights of the father of the youngest two children, Ev.W. and Ez.W.  The parental rights of the father of the three oldest children, Z.C., Z.C., and Z.C., were not terminated, as those three children remained in his care. Throughout this opinion, any reference to "the father" refers to the father of Ev.W. and Ez.W.

**I.      Background**

At the time of the termination-of-parental-rights hearing, Ev.W. was five years old, Ez.W. was four, and the three oldest children were sixteen, thirteen, and nine.  The mother and father had been together for approximately seven years and had been married for over three and one-half years.  Their relationship was marred by methamphetamine abuse and domestic violence.  The Iowa Department of Human Services (DHS) became involved with the family multiple times, most recently in the fall of 2019.  In September 2019, the children were removed from the care of the mother and father due to domestic violence and methamphetamine-abuse concerns, coupled with the mother showing up at the school of the second and third oldest children and attempting to take them in violation of a court order. Fortunately, objections from the children and the school thwarted the mother's apparent efforts to take the children.  Child-in-need-of-assistance (CINA) proceedings were started regarding all five children.  After over one year of services, with no significant progress by the mother and father, the juvenile court terminated the mother's rights to all five children pursuant to Iowa Code section

232.116(1)(f) and (*l*) (2020) and the father's rights to Ev.W. and Ez.W. pursuant to the same paragraphs of section 232.116(1). Both parents appeal.

## II. Standard of Review and the Termination Process

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

Review of termination-of-parental-rights proceedings under Iowa Code chapter 232 follows a three-step analysis, with each step having to be established before moving to the next: (1) determine whether any ground for termination under section 232.116(1) has been established; (2) determine whether the best-interest-of-the-child framework set forth in section 232.116(2) supports termination of parental rights; and (3) consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights. *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).

## III. The Mother's Appeal

While a lack of clarity in the mother's petition on appeal causes the need for some speculation as to what issues she raises, we interpret her petition as raising four challenges: (1) the State failed to prove statutory grounds for termination; (2) termination is not in the children's best interest; (3) the closeness of the mother's relationship with the children necessitates application of an exception to termination; and (4) the mother should have been given additional time to work toward reunification.

### A.    Statutory Grounds

Although the juvenile court terminated the mother's rights pursuant to multiple paragraphs of Iowa Code section 232.116(1), our case law permits us to affirm if any one of the paragraphs relied upon by the juvenile court is a viable ground for termination.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  In this case, we choose to rely upon section 232.116(1)(f), which permits termination of parental rights if the State establishes:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother concedes the State established the first three elements, so she focuses her challenge on the fourth element, claiming the children could have been returned to her care at the present time.  *See A.S.*, 906 N.W.2d at 473 (holding "at the present time" in the context of Iowa Code section 232.116(1) means at the time of the termination hearing).

We disagree with the mother's assertion the children could be returned to her care.  The mother has substance-abuse and mental-health issues and has not addressed either issue adequately.  These proceedings are the second time the DHS has been obligated to become involved with the family due to the mother's methamphetamine abuse.  In spite of repeated positive drug tests and directions to get a substance-abuse evaluation, the mother has not even taken the basic

initial step of getting an evaluation. On top of that, she also refused to participate in drug testing after her positive tests at the beginning of the current DHS involvement. The mother attempts to deflect this problem by claiming she has been regularly attending Narcotics Anonymous meetings. However, we find this unsupported testimony unpersuasive in light of the mother's refusals to be evaluated or submit to drug testing. The mother's failure to address her substance-abuse problem convinces us the children cannot be returned to her care. *See In re Z.R.*, No. 17-1004, 2017 WL 4050989, at *2 (Iowa Ct. App. Sept. 13, 2017) (collecting cases in which termination of parental rights is affirmed due to a parent's history of substance abuse).

While the mother's unchecked drug problem is enough to establish the statutory ground for termination, there is more. The mother also has mental-health issues, but she has failed to get a mental-health evaluation to determine what treatment, if any, is needed. This further supports the conclusion that the children cannot be returned to her care. *See In re S.C.*, No. 15-0262, 2015 WL 2089743, at *3 (Iowa Ct. App. May 6, 2015) (collecting cases where termination of parental rights is affirmed when a parent has untreated mental-health conditions).

Additionally, the father has repeatedly perpetrated acts of domestic violence against the mother, at least two of which occurred since the children were removed. The incidents have included the father striking the mother, kicking in a door to the residence, intentionally destroying items in the home with a hammer, and violating a no-contact order. The volatility of the parents' relationship is so prevalent that it manifests itself even when service providers are present, as a supervised visit between the parents and the children had to be ended early due

to the aggressive nature of the arguing between the parents. The children have been negatively affected by this behavior, as, on one visit by a caseworker, they spontaneously reported "Daddy tried to hurt Mommy" immediately upon the worker's arrival for the visit. The children have also expressed fear of being in the home because of the violence. In spite of these episodes and the impact on the children, the mother took action to have the no-contact order against the father terminated and immediately began living with him again thereafter. Her testimony shows a concerning tendency to downplay the severity of the domestic violence and a lack of awareness of the impact it could have on the children. Neither parent has addressed the domestic violence concerns adequately to convince us it is safe to return the children to either parent's care.

The mother's unaddressed substance-abuse and mental-health issues, coupled with her inability or unwillingness to extricate the children from a life tainted by domestic violence, convinces us the children could not be returned to her care. The State has established statutory grounds for termination of the mother's rights pursuant to section 232.116(1)(f).

### B.      Best Interests and Permissive Exception

The mother blends her argument that termination of her rights is not in the best interests of the children and the closeness of her relationship with the children permits an exception to termination pursuant to Iowa Code section 232.116(3)(c). We will do the same, as the mother's claim that termination is not in the children's best interests is largely based on her claim that the bond between her and the children should prevent termination. While combining our discussion, we note it is the State's burden to prove termination is in the children's best interests while it is

the mother's burden to prove the applicability of an exception to termination. *See In re A.H.*, No. 17-0025, 2017 WL 1278371, at *1 (Iowa Ct. App. Apr. 5. 2017) (holding the State must prove termination of parental rights is in the best interests of the child); *A.S.*, 906 N.W.2d at 475 (holding the parent resisting termination bears the burden of proof to establish an exception under section 232.116(3)).

The record firmly establishes the mother loves the children and the younger two children are closely bonded to her. However, love of the children is not enough, as "our consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the children's] developing needs." *D.W.*, 791 N.W.2d at 709. Here, there will certainly be disadvantages to terminating the mother's parental rights. Nevertheless, we find those disadvantages are outweighed by the safety concerns stemming from the mother's inability to provide for the children's needs. The three oldest children, through their conversations with service providers and recommendations made by their guardian ad litem, expressed their weariness of waiting for their mother to get her life together so they could have some stability. In a very poignant and heartbreaking statement at the termination hearing, the oldest child expressed how harmful the mother's actions have been to the three oldest children, his desire not to be placed back into her home, and his fear his younger half-siblings will have to live through the turmoil to which the older three have been subjected for many years. His statement epitomizes what we mean when we say "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable

home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Based on our de novo review, we conclude termination of the mother's parental rights is in the best interests of the children and the closeness of any relationship between the mother and the children does not overcome the safety concerns that would come with not terminating the mother's parental rights.

### C. Additional Time

As to the mother's claim she should have been given additional time to work toward reunification, we find the mother has waived the issue due to failure to sufficiently develop it. The portion of the mother's petition addressing this issue consists of the single sentence, "The Court should have granted [the mother] additional time to achieve reunification." This passing reference is insufficient to avoid waiver of the issue. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (indicating a "passing reference" in a brief is insufficient to present an issue for review); *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."). Even if the mother had not waived the issue, we note the mother and the family have been receiving services off and on for nearly seven years with very little to no improvement. We have no reason to believe an additional six months will change the situation sufficiently to allow the children to return to the mother's care. *See* Iowa Code §§ 232.117(5) (permitting the court to consider other permanency options pursuant to section 232.104 if termination is not ordered), 232.104(2)(b) (permitting the court to enter a permanency order to give a parent an additional six months to work toward

reunification if able to enumerate factors that "comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

## IV.     The Father's Appeal

The father's petition on appeal is also unclear as to the issues he raises, but we interpret his petition as raising four challenges: (1) the State failed to prove statutory grounds for termination; (2) termination is not in the children's best interest; (3) the closeness of the father's bond with the children necessitates applying an exception to termination; and (4) the father should have been given additional time to work toward reunification.

### A.     Statutory Grounds

As previously noted, the father's parental rights were terminated pursuant to section 232.116(1)(f) and (*l*).  As with the mother's appeal, we choose to focus on paragraph (f).  *See A.B.*, 815 N.W.2d at 774 (permitting the court to affirm termination on any ground supported by the record).  Like the mother, the father concedes the first three elements of paragraph (f) have been established but argues the State failed to meet the fourth element that the children could not be returned to his care.

We have no hesitation in concluding the children could not be placed in the father's care at the time of the termination hearing.  The father was thirty-two years old at the time of the hearing and acknowledged he had been using methamphetamine since he was fourteen years old.  Throughout the fourteen-month period between removal of the children and the termination hearing, the father repeatedly assaulted the mother, violated a no-contact order, kicked in the

door to the family residence, destroyed property in the residence, repeatedly relapsed on methamphetamine, refused to submit to drug testing because he knew the tests would come back positive, and spent considerable time in jail. With remarkable candor, he acknowledged he gets angry, becomes violent, and makes bad decisions when he uses methamphetamine; he is dangerous to others and himself when using; and he cannot control his behaviors when using.

In spite of the fact the father knows he is violent and a danger when using methamphetamine, his only significant period of sobriety during that fourteen-month period was the three-month period he was in jail, and he relapsed less than one month after getting out. In spite of this overwhelming evidence of unmitigated substance abuse and the danger the father poses to those around him, the father seeks to defeat termination by claiming there was no evidence that he would ever harm the children even when using methamphetamine. We do not share the father's confidence in his claimed ability to limit his methamphetamine-fueled violent outbursts so as to avoid harm to the children. Further, the father's argument ignores the evidence that the children have already been psychologically harmed by his drug use and violence. The children cannot be safely returned to the father's care, and the State has established statutory grounds for terminating the father's parental rights.

**B.     Best Interests and Permissive Exception**

Like with the mother, there is strong evidence the father loves the children and the children love him and terminating his parental rights will have some negative impact on the children. But, like with the mother, we conclude the harm to the children by not terminating the father's parental rights significantly outweighs

the harm that would come from termination. The father admits he is violent and a danger to himself and others when using methamphetamine. The father's unchecked and chronic methamphetamine addiction that leads to violence and "bad decisions" convinces us that it is in the children's best interest to terminate the father's parental rights. The closeness of his bond with the children does not overcome this conclusion.

### C.     Additional Time

In his testimony during the hearing, the father was adamant that if he was given additional time to work toward reunification, he would show he would be a proper placement for the children. However, approximately two months after the hearing, but before the juvenile court issued a ruling, the record was reopened without objection and additional evidence was submitted in the form of a report. The report showed that, after the termination hearing, the father had been allowed unsupervised access to Ev.W. and Ez.W. in violation of court orders and DHS directives. Both children then tested positive for methamphetamine. This turn of events contributes to our decision to reject his plea for additional time. The father has an eighteen-year history of methamphetamine abuse that remains unchecked. During the fourteen-month period during which it would be expected the father would put his best foot forward, his only period of nonuse was while he was in jail, and, even then, he relapsed within a matter of a few weeks after his release. He has not undergone treatment and refuses to submit to drug testing. In short, there is nothing in this record that persuades us that an additional six months is likely to result in a different and better environment for the children with the father.

**V.**     **Conclusion**

On our de novo review, we conclude the State established statutory grounds for terminating the mother's parental rights to all five children and the father's rights to Ev.W. and Ez.W.  We also conclude termination of the parents' rights is in the best interests of the children, an additional six months would not negate the need for removal, and the closeness of the parents' relationships with the children does not overcome the need for termination due to the safety concerns involved.

**AFFIRMED ON BOTH APPEALS.**